UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. RICHARD K. EATON, SENIOR JUDGE

———————————————————

| | | |
|---|---|---|
| | : | |
| VECOPLAN, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Court No. 20-00126 |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |

———————————————————:

## <u>PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>

On behalf of Vecoplan LLC,

Lawrence M. Friedman
Pietro N. Bianchi
**BARNES, RICHARDSON & COLBURN, LLP**
303 East Wacker Drive
Suite 305
Chicago, IL 60601
O: 312 297-9554
M: 847 331-5797
lfriedman@barnesrichardson.com

# TABLE OF CONTENTS

DESCRIPTION OF THE MERCHANDISE ................................................................... 1

TARIFF ITEMS AT ISSUE ..................................................................................... 2

QUESTION PRESENTED ....................................................................................... 3

STATEMENT OF FACTS ....................................................................................... 3

SUMMARY OF ARGUMENT .................................................................................. 3

JURISDICTION ................................................................................................... 3

STANDARD OF REVIEW ...................................................................................... 4

ARGUMENT ...................................................................................................... 5

A.      Defining the Tariff Terms ........................................................................ 5

    1.      *Grinding Machines Demolish Input Material into Relatively Small Particles* ................ 5

    2.      *Crushing Machines Demolish Input Materials by Breaking, Pounding or Grinding* ........ 7

    3.      *Screening Machines Sift Output Material to a Desired Size* ................................... 8

B.      Size-Reduction Machines that Employ Cutting Surfaces are not Excluded from 8479.82 .... 9

C.      Regardless of What They Are Called, The Single-Shaft Rotary Size-Reduction Machines are Machines for Crushing, Grinding and Screening ................................................. 13

    1.      *The VAZ 1600 and VAZ 1800 Machines Perform Crushing, Grinding, and Screening Functions* ........... 14

    2.      *Single-Shaft Rotary Side-Reductions Machines Were and Are Marketed as "Grinders"* ............. 23

D.      Respectful Consideration of the German Version of the Harmonized Tariff Indicates that Single-Shaft Rotary Size-Reduction Machines are Classifiable in HS Subheading 8479.82. .......... 29

CONCLUSION .................................................................................................. 30

**TABLE OF AUTHORITIES**

## Cases

*Baxter Healthcare Corp. v. United States*, 182 F.3d 1333, 1337-38 (Fed. Cir. 1999) ...................................5

*Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999) ..........................................5

*Crown Cork & Seal Co. v. United States*, 65 Cust. Ct. 483, 495 (1970) ..................................10, 11

*Cummins Inc. v. United States*, 454 F.3d 1361, 1363 (Fed. Cir. 2006) ..............................4, 29

*Jacobi Carbons Ab v. United States*, 38 CIT 932,  992 F. Supp. 2d 1360 (2014) ..........................29

*Jarvis Clark Co. v. United States*, 733 F.2d 873, 878 (Fed. Cir. 1984) .................................5

*JVC Co. of Am. v. United States*, 234 F.3d 1348 (Fed. Cir. 2000)...........................................6

*Kahrs Int'l, Inc. v. United States*, 713 F.3d 640, 645 (Fed. Cir. 2013)..............................5

*Link Snacks, Inc. v. United States*, 742 F.3d 962, 965 (Fed. Cir. 2014) ............................4

*Marbury v. Madison*, 5 U.S. 137, 177 (1803).................................................4

*Plexus Corp. v. United States*, 489 F. Supp. 3d 1379 (Ct. Int'l Trade 2020) ...........................6

*Rohm & Haas Co. v. United States*, 727 F.2d 1095 (Fed. Cir. 1984) ..................................4

*Rubberset Co. v. United States*, 68 Cust. Ct. 370, 372 (1972) .......................................13

*Schlumberger Tech. Corp. v. United States*, 845 F.3d 1158, 1162 (Fed. Cir. 2017).....................4

*Sigma-Tau HealthScience, Inc. v. United States*, 838 F.3d 1272, 1278 (Fed. Cir. 2016) ....................4

*Timber Prods. Co. v. United States*, 515 F.3d 1213 (Fed. Cir. 2008) ...........................4, 5

*United States v. Colonial Commerce Co.*, 44 C.C.P.A. 18 (1956) .....................5, 6, 7, 10

*Universal Elecs. v. United States*, 112 F.3d 488, 491 (Fed. Cir. 1997) ....................................4

*Victoria's Secret Direct, LLC v. United States*, 37 CIT 573, 908 F. Supp. 2d 1332 (2013) ........................29

## Statutes

28 U.S.C. § 2639(a)(1)(1994) .................................................................4

28 USC § 2640(a) .....................................................................4

28 USC. § 1581(a) ....................................................................4

Council Regulation 2658/87, Integrated Tariff of the European Communities, (1987) O.J. (L256).29, 30

Harmonized Tariff Schedule of the United States, 19 U.S.C. 1202, USITC Publication 5143 (Nov. 2020)...........................................................................2

HTSUS, Chapter 84, Note 7 ............................................................23

## Other Authorities

Allegheny, "Allegheny Security Grinders" (2008) .........................................28

*American Heritage Dictionary of the English Language* (1975).....................................6, 7, 8

Cabela's, "Cabela's Commercial Grade Grinder Blade,"
    https://www.cabelas.com/shop/en/cabelas-commercial-grade-grinder-blade.................................12

Cabela's Commercial-Grade 1HP Carnivore Meat Grinder,"
    https://www.cabelas.com/shop/en/cabelas-commercial-grade-1hp-carnivore-meat-grinder .......12

Coffee HQ, "How to Sharpen Coffee Grinder Burrs," https://mycoffeehq.com/sharpen-grinder-burrs/ ...........................................................................11

Cuisinart, *Spice and Nut Grinder SG-10*, 3,
    https://www.cuisinart.com/globalassets/catalog/appliances/food-processors/spice-and-nut-grinder/sg-10.pdf (last visited Oct. 29, 2022) ..............................................11

Deposition Testimony of Gary Kolbet ....................................................................................passim
Deposition Testimony of Len Buesse ...................................................................................... 7, 25
Deposition Testimony of Thomas Sturm ...............................................................................passim
FDMC Magazine (Sept. 2020) ...................................................................................................28
JavaPresse, "4 Signs It's Time to Replace Your Coffee Grinder's Burrs."
    https://www.javapresse.com/blogs/grinding-coffee/4-signs-time-replace-coffee-grinder-burrs,
    Last visited Oct. 23, 2022 ...................................................................................................11
JWC Environmental, *Industrial Shredder/Waste Grinder Cut Big Problems Down to Size*,
    https://www.jwce.com/products/4-shred-2/ (last visited Oct. 23, 2022) .......................................12
KitchenAid Model BCG211OB ...................................................................................................11
Langenscheidt, New College German Dictionay (1990) .................................................................30
Pallet Enterprise, (Sept. 2020) ...................................................................................................28
Plaintiff's Responses to Defendant's First Interrogatories .............................................................18
*Random House Webster's College Dictionary,* 588 (1991) ........................................................7, 8
Supplemental Statement of Gary Kolbet ...................................................................................18
Vecoplan AG, "Shredding * Gruppe Zerkleinern" ......................................................................30
Vecoplan Shreds BOWLING BALLS! ......................................................................................18
Vecoplan, "The Original Single-Shaft Rotary Waste Grinder," (2001) .........................................26
Vecoplan, VAZ 1300-1600 New Generation Shredders, Sturm Deposition Testimony Exhibit 36
    ....................................................................................................................................passim
Vecoplan, VAZ 1800 Rotary Shredder, Sturm Deposition Testimony Exhibit 44.......................... 1, 16
Vecoplan, VHZ 600/800/1100 (2021) ........................................................................................28
Vecoplan's Response to Customs Proposed Notice of Action ......................................................20
*Webster's New World Dictionary, Third College Edition*, (1988) ..................................................7

## Administrative Materials

HQ H289652 (Jul. 30, 2018) ....................................................................................................9
HQ H300870 (Jan. 15, 2020) ....................................................................................................9
NY E85833 (Sep. 2, 1999) ......................................................................................................10
NY N248108 (Dec. 10, 2013) ..................................................................................................10
US Patent 6,837,453 B2 (Jan. 4, 2005).......................................................................................24
US Patent 9,144,803 B2 (Sep. 29, 2015)....................................................................................24
World Customs Org., Harmonized Commodity Description & Coding Sys., Explanatory Notes (3
    ed. 2022) ........................................................................................................................10

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. RICHARD K. EATON, SENIOR JUDGE

_____

|                          |   |                     |
|--------------------------|---|---------------------|
| VECOPLAN, LLC,           | : |                     |
|                          | : |                     |
|              Plaintiff,  | : |                     |
|                          | : | Court No. 20-00126  |
|              v.          | : |                     |
|                          | : |                     |
| UNITED STATES,           | : |                     |
|                          | : |                     |
|              Defendant.  | : |                     |

_____

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Rules of this Court, Plaintiff, Vecoplan LLC ("Plaintiff" or "Vecoplan"), of Archdale, North Carolina, respectfully moves this Court to enter summary judgment in its favor regarding the legally correct classification under the Harmonized Tariff Schedule of the United States of size-reduction machinery used in the recycling and waste management industry. The parties have completed discovery and there are no material facts in dispute.

### DESCRIPTION OF THE MERCHANDISE

The imported machines are single-shaft rotary size-reduction machines. The machines at issue are the VAZ 1600 and VAZ 1800 models. Within each model, there are variations of size and design, but all are single-shaft rotary size-reduction machines. Exhibit 1[1] and Exhibit 2[2] are the commercial descriptions and specifications for the machines, the operation and use of which are described more fully below. Vecoplan's parent company makes the machines in Germany. Vecoplan

_____

[1]Vecoplan, VAZ 1300-1600 New Generation Shredders, Sturm Deposition Testimony Exhibit 36.
[2] Vecoplan, VAZ 1800 Rotary Shredder, Sturm Deposition Testimony Exhibit 44.

imported the merchandise in 2018, 2019, and 2020 through the Ports of Baltimore, Maryland; Newark, New Jersey; Norfolk-Newport News, Virginia; and Los Angeles, California.

## TARIFF ITEMS AT ISSUE

Customs liquidated the entries of Vecoplan's size-reduction machines in HTSUS item 8479.89.65, which covers:

> Machines and mechanical appliances having individual functions, not specified or included elsewhere in this chapter; parts thereof:
>
> > Other machines and mechanical appliances:
> >
> > > Other:
> > >
> > > > Electromechanical appliances with self-contained electric motor:
> > > >
> > > > > Other . . . 2.8%

Vecoplan agrees that the size-reduction machines are properly classified in Heading 8479 but contends that the legally correct classification is under tariff item 8479.82.00, which covers:

> Machines and mechanical appliances having individual functions, not specified or included elsewhere in this chapter; parts thereof:
>
> > Other machines and mechanical appliances:
> >
> > > Mixing, kneading, crushing, grinding, screening, sifting, homogenizing, emulsifying or stirring machines . . . Free

All references to the HTSUS in this motion refer to Revision 28 of the Harmonized Tariff Schedule of the United States, 19 U.S.C. 1202, USITC Publication 5143 (Nov. 2020). There are no relevant differences among the HTSUS editions applicable in 2018, 2019, or 2020.

## QUESTION PRESENTED

This case can be reduced to the simple question of whether the VAZ 1600 and VAZ 1800 single-shaft rotary size-reduction machinery are crushing, grinding, or screening machines even though they include cutting surfaces and the importer has elected to call them "shredders."

## STATEMENT OF FACTS

Pursuant to Rule 56.3 of the Rules of the Court of International Trade, attached hereto is a statement of material facts as to which plaintiff contends there is no genuine issue to be tried.

## SUMMARY OF ARGUMENT

Regardless of what they are called, the imported machines are crushing, grinding, and screening machines that reduce the size of waste products to produce valuable material for recycling. The machines operate by crushing, grinding, and screening to reach the desired output. Because they are called out *eo nomine* in the tariff schedule as crushing, grinding, or screening machines, they must be classified as such rather than in the less specific subheading for "other" unspecified machines.

Moreover, "shredder" is not a tariff term. Defendant's effort to draw a distinction between shredders and grinders for tariff classification purposes is not supported by the language of the HTSUS, dictionary definitions, or other lexicographical materials including relevant examples of common usage.

Finally, respectful consideration of the German language version of the Harmonized System indicates that these machines are included within the scope of subheading 8479.82.

## JURISDICTION

Vecoplan timely protested the liquidation of the entries of the subject merchandise and Customs denied those protests. Vecoplan filed a timely summons in this Court. The Court of

International Trade has exclusive jurisdiction to review the denied protests pursuant to 28 USC. §
1581(a). All liquidated duties, taxes, and fees have been paid.


## STANDARD OF REVIEW

The Court of International Trade determines tariff classifications based on the record made
before it. 28 USC § 2640(a). To reach its determination, the Court must first ascertain the proper
meaning of the relevant tariff terms. *Schlumberger Tech. Corp. v. United States*, 845 F.3d 1158, 1162 (Fed.
Cir. 2017); *Sigma-Tau HealthScience, Inc. v. United States*, 838 F.3d 1272, 1278 (Fed. Cir. 2016). That is a
question of law. *Cummins Inc. v. United States*, 454 F.3d 1361, 1363 (Fed. Cir. 2006). The Court must
then determine whether the subject merchandise falls within the properly construed tariff terms.
*Sigma-Tau HealthScience*, 838 F.3d at 1272. That is a question of fact. *Cummins*, 454 F.3d at 1363.
When there are no facts in dispute, the analysis collapses entirely into a question of law. *Link Snacks,
Inc. v. United States*, 742 F.3d 962, 965 (Fed. Cir. 2014).

The classification asserted by the Government is presumed to be correct. *Universal Elecs. v.
United States*, 112 F.3d 488, 491 (Fed. Cir. 1997) (citing 28 U.S.C. § 2639(a)(1)(1994)). However, the
presumption carries no force with respect to questions of law. *Id.* at 492 (citing *Marbury v. Madison*, 5
U.S. 137, 177 (1803), for the proposition that "it is emphatically the province and duty of the judicial
department to say what the law is."). Related to this concept, "the importer has no duty to produce
evidence as to what the law means because *evidence* is irrelevant to that legal inquiry." *Universal Elecs.,*
112 F.3d at 492 (emphasis in original).

When interpreting the language of the tariff schedule, the Court must presume the correct
meaning to be its common and commercial meaning. *Timber Prods. Co. v. United States*, 515 F.3d 1213,
1219 (Fed. Cir. 2008). A narrow exception applies where a party proves that there is a different
commercial meaning that is "definite, uniform, and general throughout the trade." *Id.* (quoting *Rohm
& Haas Co. v. United States*, 727 F.2d 1095, 1097 (Fed. Cir. 1984)). A commercial designation should

be so universal and understood "that Congress, and all the trade, are supposed to have been fully acquainted with the practice at the time the law was enacted." *Id.* Unlike the common meaning of a tariff term, a party asserting a commercial designation must prove it is appliable as a matter of fact by a preponderance of the evidence. *Id.*

Finally, the Court must consider the correctness of the Government's classification independently and in comparison to Vecoplan's proposed alternative. *Jarvis Clark Co. v. United States*, 733 F.2d 873, 878 (Fed. Cir. 1984).

**ARGUMENT**

**A.     Defining the Tariff Terms**

When construing the HTSUS, the Court may rely on its own understanding of the terms used and may consult lexicographical and scientific authorities, dictionaries, and other reliable sources. *Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999) (citing *Baxter Healthcare Corp. v. United States*, 182 F.3d 1333, 1337-38 (Fed. Cir. 1999)). Although not binding, the Court may also consult the Harmonized Commodity Description and Coding System's Explanatory Notes. *Kahrs Int'l, Inc. v. United States*, 713 F.3d 640, 645 (Fed. Cir. 2013).

*1.     Grinding Machines Demolish Input Material into Relatively Small Particles*

*United States v. Colonial Commerce Co.*, 44 C.C.P.A. 18 (1956) involved the tariff classification of imported sage with the specific question being whether the merchandise was ground or unground. The Court of Customs and Patent Appeals described the issue as determining, in part, "the process by which the material was reduced in size . . . ." *Id.* at 20. The Court reviewed prior decisions of the Board of General Appraisers and dictionary definitions to conclude that "although grinding is necessarily a physical process involving the application of friction, or crushing, to the material at

hand, **the term is broad enough to cover a variety of processes by which materials are divided into relatively small particles**.” *Id.* (emphasis added).

Regarding the particles that result from grinding, the C.C.P.A. noted:

> It is true that the definitions of grinding contemplate a reduction to small particles or to powder, but no definition has been cited, and we have found none, which gives actual limiting dimensions of the particles or powder included in the definition of the word “grind” or “ground.” It is obvious, however, that the term may be applied to particles of various sizes since it is common, as in the case of coffee, for example, to speak of course and fine grinding.

*Id.* at 21. This conclusion is consistent with the C.C.P.A.’s prior statement that the resulting particles need only be “relatively small.” While a decision of the C.C.P.A. interpreting a prior tariff act is not controlling, its interpretation of the term “grinding” is instructive. *JVC Co. of Am. v. United States*, 234 F.3d 1348, 1355 (Fed. Cir. 2000); *Plexus Corp. v. United States*, 489 F. Supp. 3d 1379, 1406 (Ct. Int'l Trade 2020). *Colonial Commerce*, therefore, is instructive of the proper scope of the term “grinding” as used in the HTSUS.

Dictionary definitions are in accord. In *Colonial Commerce*, the C.C.P.A. referenced several dictionary definitions. One such definition was taken from “the Century Dictionary and Cyclopedia, Revised Editions,” which the Court quoted as to “break and reduce to fine particles by pounding, crushing, or rubbing, as in a mill or mortar, or with the teeth.” *Id.* at 21. With respect to this definition, the C.C.P.A. noted “that while two of the above definitions state that grinding involves a reduction in size ‘as in a mill,’ they are not limited to the use of a mill, but mention it only as an example.” *United States v. Colonial Commerce Co.*, 44 C.C.P.A. at 21.

According to *The American Heritage Dictionary of the English Language* (1975) (attached as part of collective Exhibit 3) “grind” means, among other things: “1. a. To crush, pulverize, or powder with friction, especially by rubbing between two hard surfaces: *grind wheat into flour*. b. To shape, sharpen, or refine with friction: *grind a lens*. 2. To rub (two surfaces) together; gnash: *grind the teeth*. 3. To bear down on harshly; crush.” *Id.* at 579-80 (Exhibit 3, 004-005) (emphasis in original definitions). Moreover, the same source equates “grind” with “pulverize.” *Id.* at 1059 (Exhibit 3, 006) (defining

pulverize as "1. To pound, crush, or grind to a powder or dust. 2. To demolish."). *Webster's New World Dictionary, Third College Edition*, 594 (1988) (attached as part of collective Exhibit 3) defines "grind," in relevant part as, "to crush into bits or fine particles between two hard surfaces; pulverize." Exhibit 3, 011. The *Random House Webster's College Dictionary* (1991) (attached as part of collective Exhibit 3) gives two relevant definitions for "grind:" "2. To reduce to fine particles as by pounding or crushing; pulverize. . . . 6. To produce by crushing or abrasion: *to grind flour*." *Id.* at 588 (Exhibit 3, 015).

Therefore, as the Court of Customs and Patent Appeals stated in *Colonial Commerce* and consistent with the above dictionary definitions, a grinder is a machine that break input material into relatively smaller "bits or fine particles." While "grinding machines" may employ two hard surfaces to crush the input material, the C.C.P.A. made it clear that other processes for size reduction also constitute grinding. The definitions cited above indicate, for example, that pounding, crushing, and pulverizing may be employed to grind.

        2.     *Crushing Machines Demolish Input Materials by Breaking, Pounding or Grinding*

Grinding and crushing are related in that the purpose of both is to reduce the size of the input material. In *Colonial Commerce*, the C.C.P.A. explicitly linked the two, saying that grinding is "the application of friction, **or crushing**, to the material at hand." *Colonial Commerce Co.*, 44 C.C.P.A. at 20 (emphasis added). Definitions of "crush" also make this connection. For example, *The American Heritage Dictionary* at 318 (Exhibit 3, 003), defines "crush" as: "1. To press between opposing bodies so as to break or injure; mash; squeeze. 2. To break, pound, or grind (stone or ore, for example) into small fragments or powder." The *Random House* dictionary defines "crush," in part, as "2. To pound into small particles as stone." *Id.* at 327 (Exhibit 3, 014). These last two definitions are consistent with the deposition testimony of Len Beusse, plaintiff's former Chief Operating Officer, who described "crushing" in this context as "impact and shatter." Beusse Dep. (Exhibit 4)

129:16, Jul. 7, 2022 (attached as Exhibit 4). He distinguished that operation from the processing of softer materials like plastic film or fibrous materials, which he also described as grinding. *Id.* at 130:4-9.

### 3. Screening Machines Sift Output Material to a Desired Size

As a noun, "screen" refers to, among other things, a "coarse sieve used for sifting out fine particles, as of sand, gravel, or coal." *American Heritage Dictionary,* at 1166 (Exhibit 3, 007). As a verb, the same source defines "screen" as to "separate or sift out by means of a sieve or screen." *Id.* at 1167 (Exhibit 3, 008). The *Random House* definitions are similar. That dictionary defines a screen as "a sieve or other mesh like device used to separate smaller particles or objects from larger ones, as for grain or sand." *Random House*, at 1205 (Exhibit 3, 016). As a verb, the same source defines "screen" as "to sift or sort by passing through a screen." *Id.* (Exhibit 3, 016).

A related noun is "screening," which means "[r]efuse, such as waste coal, separated out by a screen; siftings." *American Heritage,* at 1167 (Exhibit 3, 008). Similarly, the *Random House* dictionary, at 1205 (Exhibit 3, 016), defines "screening" as "undesirable material that has been separated from useable material by means of a screen."

The above definitions, which are consistent with the C.C.P.A decision in *Colonial Commerce,* reflect the common meaning that crushing and grinding machines are a general category of equipment that demolish input material by applying a harsh force to break them to relatively small fragments, bits or particles. The range of possible mechanisms for accomplishing the size reduction include friction, abrasion, crushing force, pounding, pulverizing, or other means as in, but not limited to, a mill, or mortar, or with the teeth. Screening machines use a sieve or similar device to separate materials.

**B.     Size-Reduction Machines that Employ Cutting Surfaces are not Excluded from 8479.82**

Defendant's expected position is well explained in the Headquarters Rulings Customs and Border Protection issued to Vecoplan. In the initial ruling, HQ H289652 (Jul. 30, 2018), Custom stated that:

> [T]he size reduction machine is also described as a "shredder" in the descriptions of its patents with multi-point cutters. One patent named "Shredder" describes the invention as a "rotary shredder for shredding various materials including fibrous materials . . ." and noting that the "rotor carries a plurality of cutters." This patent also notes that the cutters "are positioned to work in conjunction with the counter knife to cut material that accumulates between adjacent V-cutters." Moreover, a second patent named "Shredder with multi-point cutters," states that that "[m]aterial fed into the space between the rotor and counter knife is cut into pieces by the cutters . . . ." Notably, the international classification for the "Shredder with multi-point cutters," patent is listed as B02C18/00, which corresponds to "Disintegrating by knives or other cutting or tearing members which chop material into fragments." Therefore, based on our review of the product descriptions, product literature, and the patents that involve similar technology, we find that the subject size reduction machine does not have the functions of subheading 8479.82.00, HTSUS, and therefore does not fall under the scope of subheading 8479.82.00, HTSUS.

In the second ruling Customs issued to Vecoplan, HQ H300870 (Jan. 15, 2020), CBP held that the cutting action that occurs in the size-reduction process is incompatible with the meaning of the tariff terms "crushing" and "grinding" as used in HTSUS item 8479.82.00. Specifically, Customs stated:

> The single shaft rotor of the subject size reduction machine, which has multi-point cutters, is positioned to work in conjunction with the counter knife to cut material. Moreover, the material that is fed into the space between the rotor and the counter knife is cut into pieces by the cutters. The functions of the size reduction machine clearly fit the dictionary definition of shred, which is to cut material into smaller pieces, regardless of the fact that it is a single rotor machine.  Moreover, in NY N248108, dated December 10, 2013, CBP held that "[c]utting and tearing [were] not functions encompassed by subheading 8479.82.0080, HTSUS."  In NY E85833, dated September 2, 1999, CBP also determined that shredding was not mentioned in the language of subheading 8479.82.00, nor was it synonymous with any of the terms of the subheading.

This analysis relied in part on NY N248108 (Dec. 10, 2013) in which CBP classified a metal "pre-shredding machine" that employed two counter-rotating toothed rotors. With no lexicographical support, Customs reached the conclusion that "the Pre-Shredding Machine does not crush or grind the scrap but rather cuts or tears it into smaller pieces. Cutting and tearing are not functions encompassed by subheading 8479.82.0080, HTSUS." In NY E85833 (Sep. 2, 1999) Customs reached a similar conclusion that "shredding is not synonymous with crushing, grinding, or any other term of this particular subheading [*i.e.*, 8479.82.00]."

However, Customs' distinction is not found in the tariff language nor common and commercial usage. While the definitions of "grinding" and "crushing" described above do not mention "cutting," they also do not preclude cutting as part of the grinding and crushing process. *Colonial Commerce* makes clear that grinding is a broad term covering a number of processes. *Colonial Commerce*, 44 C.C.P.A. at 20. Further, the World Customs Org., Harmonized Commodity Description & Coding Sys., Explanatory Notes (3 ed. 2022) for heading 8479, include no definition or limitation on what constitutes "grinding" and "crushing" that excludes cutting as part of the process. Finally, as is discussed below, "cutting" is a limited part of the crushing and grinding process that occurs in the VAZ 1600 and VAZ 1800 machines.

The Customs Court reiterated the breadth of operations that may be encompassed in "grinding" in *Crown Cork & Seal Co. v. United States*, 65 Cust. Ct. 483 (1970), which involved the classification of cork waste in irregular shaped particles that were "generally of one-half inch in the longest linear dimension." *Id.* at 484. Prior to exportation to the United States, the cork had been "broken" in a "bale breaker." *Id.* at 488. The classification question was whether the cork should be classified as "Natural cork not manufactured" or as "Cork, granulated or ground." That required the Court to determine whether breaking resulted in cork that had been ground. Relying in part on *Colonial Commerce*, the Customs Court held:

> From all of the cases examined at least two conclusions may be drawn: first, that grinding is a manufacturing process, and second, that it consists of a reduction of a

> material to small particles. Since the word "grinding" "is broad enough to cover a variety of processes by which materials are divided into relatively small particles", it includes breaking, crushing, **cutting** or pulverizing.

*Id.* at 496 (emphasis added).

A few examples of usage illustrate that "cutting" is not incompatible with "grinding." First, there is a category of coffee and spice "grinders" designed to use a rotating blade. *See, e.g.,* KitchenAid Model BCG211OB, https://www.kitchenaid.com/countertop-appliances/coffee-products/coffee-grinders/p.coffee-and-spice-grinder.bcg211ob.html? (last visited Oct. 23, 2022) (attached as Exhibit 5) ("The durable blade performs powerfully, quickly grinding enough whole coffee beans to make up to 12 cups of coffee.") (Exhibit 5, 002). In this context, the blade is equivalent to a knife or cutter. *See also,* Cuisinart, *Spice and Nut Grinder SG-10,* 3, https://www.cuisinart.com/globalassets/catalog/appliances/food-processors/spice-and-nut-grinder/sg-10.pdf (last visited Oct. 29, 2022) (attached as Exhibit 6) ("Stainless Steel Blades") (Exhibit 6, 003).

Second, in coffee grinders that rely on burrs rather than blades, there is a multiplicity of cutting edges. Dull burrs should, reportedly, be replaced or sharpened. *See,* JavaPresse, *4 Signs It's Time to Replace Your Coffee Grinder's Burrs,* https://www.javapresse.com/blogs/grinding-coffee/4-signs-time-replace-coffee-grinder-burrs (last visited Oct. 23, 2022) (attached as Exhibit 7) ("[T]he slow, inevitable dulling of your burrs from normal use is not so easy to detect.") (Exhibit 7, 001); Coffee HQ, *How to Sharpen Coffee Grinder Burrs,* https://mycoffeehq.com/sharpen-grinder-burrs/ (last visited Oct. 23, 2022) (attached as Exhibit 8) ("To help you sharpen your grinder blades we've made a small guide below which will take you through when to sharpen your coffee grinder blades, the actual sharpening process and how to sharpen burr coffee grinders.") (Exhibit 8, 001). It is reasonable to infer from this usage that the coffee burr grinders have sharp cutting surfaces; and yet, they are not commonly known as "coffee shredders."

Third, meat grinders also commonly employ cutting blades. For example, the hunting equipment retailer Cabela's describes its Commercial-Grade Carnivore Meat Grinder as having "A commercial-style grinder-head ring nut [that] makes removing grinder plates, **blade** and auger easy, while the patented auger-pull-handle tool makes removal of the auger easy for easier cleanup." Cabela's, *Cabela's Commercial-Grade 1HP Carnivore Meat Grinder*, https://www.cabelas.com/shop/en-/cabelas-commercial-grade-1hp-carnivore-meat-grinder (last visited Nov. 14, 2022) (attached as Exhibit 9) (Exhibit 9, 001) (emphasis added). The replacement blade can be seen at Cabela's, *Cabela's Commercial Grade Grinder Blade*, https://www.cabelas.com/shop/en/cabelas-commercial-grade-grinder-blade (last visited Nov. 14, 2022) (attached as Exhibit 10) (Exhibit 10, 001). This is another clear example of the common and commercial usage describing a grinder as relying on a sharp cutting blade to reduce the input material to smaller pieces.

Lastly, this usage is also seen in industrial communications. For example, a company called JWC Environmental describes the "waste grinders" it sells as "shredders" and "size reduction equipment." According to the company's website, its "4-SHRED-2" machine, described as a "Waste Grinder" relies on "two rows of **sharp, steel cutters.**" JWC Environmental, *Industrial Shredder/Waste Grinder Cut Big Problems Down to Size*, https://www.jwce.com/products/4-shred-2/ (last visited Oct. 23, 2022) (attached as Exhibit 11) (Exhibit 11, 001) (emphasis added). This usage shows that "shredder" and "grinder" are clearly synonymous despite the presence of sharp cutters in the machine.

These examples illustrate that in English the usage of "grinding" does not exclude any process that relies on cutting or tearing to reduce input materials in size. Further, machines that rely on sharp cutting surfaces are not separate from crushing and grinding machines. Those machines demolish input material by breaking them into relatively small bits or particles. Therefore, for tariff purposes, the presence of cutting as part of a grinding or crushing process does not preclude the machines from being classified as a grinding or crushing machine. To the extent the Defendant is

proposing an interpretation of tariff language, that relies on an unstated limitation that is not aligned with the common and commercial meaning, the Court must either find that interpretation incorrect or that Defendant is asking to adopt a "commercial designation," with the attendant burden of proof.

### C.    Regardless of What They Are Called, The Single-Shaft Rotary Size-Reduction Machines are Machines for Crushing, Grinding and Screening

In 1972, the Honorable James Watson was asked to grapple with the legal status of the newly introduced summons in litigation before the Customs Court. Noting that the summons contains much of the information traditionally contained in complaints, he lamented "It is a source of regret to me that its true nature has been obscured by the name 'summons.'" *Rubberset Co. v. United States*, 68 Cust. Ct. 370, 372 (1972). Judge Watson then conveyed the following:

> I am reminded of the riddle attributed to President Abraham Lincoln. "If you call a tail a leg, how many legs has a dog? Five? No, calling a tail a leg don't *make* it a leg." (Italics quoted.) John Bartlett. Familiar Quotations, Little, Brown and Company (13th edition, 1955) page 542. In the same manner calling a complaint a summons does not make it a summons.

*Id.* at n.7.

Judge Watson's regret is applicable in this case. The marketing practice of calling the VAZ 1600 and VAZ 1800 size-reduction machinery "shredders" has unfortunately obscured their true nature. As Lincoln might have said, calling a VAZ 1600 or VAZ 1800 a "shredder" don't make it something other than a crushing, grinding, or screening machine. Moreover, the relevant comparison for purposes of this tariff classification decision is between "crushing, grinding, screening" in subheading 8479.82 and "other" in subheading 8479.89. "Shredder" is not a tariff term and its meaning is of no relevance in this case. Because the VAZ 1600 and VAZ 1800 are machines that crush, grind, and screen as their primary functions, the fact that they may be called "shredders" is irrelevant and the government's insistence to the contrary is without merit.

1.     *The VAZ 1600 and VAZ 1800 Machines Perform Crushing, Grinding, and Screening Functions*

The operation of these machines is not reasonably in dispute. Figure 1 below is page 3 of Exhibit 1, which is useful in understanding the operation of the machines. Although Exhibit 1 specifies on the first page that it refers to VAZ 1300 and VAZ 1600 machines, Mr. Thomas Sturm, who heads the Department of Quality, Environmental Safety, and Health at Vecoplan, AG in Germany, testified that the process is the same for the VAZ 1800 machines. Sturm Dep. (Exhibit 12) 127:9-18, Apr. 21, 2022.

There are four critical components to the process: the process ram, the cutting rotor, the counter knife, and the sizing screen. All are clearly labeled in Figure 1 below and are more fully explained in Exhibit 1.

Gary Kolbert, plaintiff's Vice President of Engineering, testified that the "process ram" is the flat blue surface at the bottom left of the hopper. Kolbet Dep. (Exhibit 13) (Exhibit 13) 122:19-123:20, Jun. 15, 2022 (attached as Exhibit 13). The action of the hydraulic cylinder, which is black and further to the left of the ram, moves the ram toward and away from the rotor depicted at the bottom right of the hopper. See *Id.* 120:25-121:5.

Visible on the surface of the rotor are "cutting inserts." These are also visible in the detailed image on the lower left of Fig. 1. The cutting inserts attach to tool holders in recesses on the rotor. Sturm Dep. (Exhibit 12) 48:4-23. The counter knife, or "bed knife," is a stationary cutting blade shaped to mesh with the peaks and recesses of the rotor surface at a distance appropriate for the material to be processed. Kolbet Dep. (Exhibit 13) 51:22-52:2. The counter knife is visible at the very bottom of the rotor in the detail image at the bottom left of Fig. 1.

Finally, the screen is shown on Exhibit 1, 003 in an open position at the far right and at the front in the second image of the machine on the lower right of the page. As stated on the document, holes in the screen range in 3/8" to 6" and allow for various sizes of output particles.



Fig. 1 Plaintiff's Exhibit 1, page 3

In operation, the VAZ 1600 rotor spins between 80 and 200 RPM. Exhibit 1, 004 (see "Details" in lower right). For the VAZ 1800, the rotor speed is 125 RPM. Exhibit 2, 002.

The size-reduction process begins when the user loads waste materials into the "infeed hopper" chamber from above. When the ram is retracted, material in the hopper falls to the hopper floor. As the ram extends forward, it pushes the input materials toward the spinning rotor. Kolbet Dep. (Exhibit 13) 122:19-123:25; Sturm Dep. (Exhibit 12) 52-25:53-7.

According to the testimony of Mr. Kolbet, once material in the hopper (or "chamber") contacts the spinning rotor, the cutting inserts act upon it. Specifically, in response to questions concerning the affidavit he signed in this matter, Mr. Kolbet testified:

Q. Okay. So I know you said as the ram -- a tool -- this is paragraph ten -- applies pressure or force to the feedstock, the single shaft rotor's tool, called the cutter, begins acting upon it immediately, in most cases well before the cutter passes through another tool called the counter knife.

This, again, is what we've already spoken about. The -- The – The cutter on the rotor acts upon the material right away prior to any additional action that might happen when the rotor passes through the counter knife; right?

A. Yes. Correct. The -- The cutter -- When the cutter returns to the cutting chamber, it can immediately be acting upon those materials. It doesn't take it getting in –

Q. Right.

A. -- it -- it -- I -- you know, just a -- a rough approximation, is 180 degrees that that cutter -- maybe 170 degrees or 160 degrees, that cutter is exposed to the material that's in that chamber, and it can, that entire distance, be acting upon the material. It can be impacting it, breaking it, crushing, scooping. All those things can happen over that --

Q. Okay.

A. – entire distance.

Q. Right. And -- And what you're --

A. But not shredding.

Q. – saying here is –

A. But not shredding.

Q. – just that –

A. Just to clarify, but I don't see shredding happening. There may be – as it passes the counter knife, maybe a -- a point could be made that -- that that -- that that one moment there's a -- just some shredding going on there, some cutting, but -- but other than that, it's grinding and crushing.

Q. Okay. In accordance with the way you define the term?

A. That's correct.

Q. Okay. And then it says, when the tools are in active motion, but -- when you say active motion, you mean that the -- the counter knife never is -- it's a stationary knife though; right?

A. It is. It's fixed. Yes.

Kolbet Dep. (Exhibit 13) 171:18-173:15.

Thomas Sturm testified that the cutting inserts interact with the input material in the cutting chamber along 120 degrees of the outer diameter of the rotor. Sturm Dep. (Exhibit 12) 84:14-20.

Describing the rotor's action on the input material, Mr. Sturm testified:

A. The rotor is like a big spinning shaft inside the size reduction machine which is equipped with sharp inserts. We call them a cutter, which are a shaft which are exposed to the material that you introduce into the machine, into the size reduction machine, and these cutters that are spinning and having a relative movement against the material will cut or scoop out particles out of the material which is introduced.

Q. And that's part of the size reduction process?

A. Yes.

Q. Okay.

A. So the rotor is the core part of the machine –

Q. Okay.

A. -- to perform the size reduction.

*Id.* 36:2-18.

Discussing the relationship between the process ram and the rotor, Mr. Sturm explained that the purpose of the ram is to bring the input material into contact with the rotor and the moving cutting inserts. According to Mr. Sturm's testimony:

17

> Some material is just brought near to the rotor, more or less pressure less. Other material sometimes requires a little pressure against the spinning rotor so that it is grabbed, and that has also to do with whether the inserts are new and sharp or whether the inserts are maybe a little bit used and round and not abrasive.

Sturm Dep. (Exhibit 12) 65:18-24. This is important in understanding the role of the cutting inserts along the rotor. Even if dull, the machine will act upon the input material. Mr. Kolbet testified that while "not the ideal function," the machines will continue to operate in the input material with dulled cutting inserts. Kolbet Dep. (Exhibit 13) 174:25-175:2.

This testimony makes it clear that the cutters along the rotating shaft are interacting harshly with the input material causing it to break into smaller pieces. The process of impacting, breaking, crushing, and scooping material happens independent of the stationary counter knife and screen.

A Vecoplan marketing video titled "Vecoplan Shreds BOWLING BALLS!" is illustrative of the harsh and destructive action of the rotor on input material. The video is accessible at https://youtu.be/JBxWcjMxhkg (last visited Oct. 29, 2022) and was identified, (along with several similar videos) in Plaintiff's Responses to Defendant's First Interrogatories, 9. According to the attached Supplemental Statement of Gary Kolbet (attached as Exhibit 14), the video was filmed in Vecoplan's prior Test Lab in Archdale, North Carolina before 2007. The YouTube label indicates it was uploaded "11 years ago." According to Mr. Kolbet, the machine used in the video is a RG52 (VAZ 1300) single shaft rotary size-reduction machine. Mr. Kolbet states that "Fundamentally, this is the same machine design as used in the VAZ 1600 and VAZ 1800 with a different drive arrangement." Exhibit 14. The video depicts (starting at 0:10) the process ram pushing bowling balls toward and then against the spinning rotor. The bowling balls violently break apart on contact with the cutting inserts (from 0:10 to 0:20). When the process ram retracts, pieces that were too large to pass the counter knife (or simply were not pushed through the counter knife) remain visible in the hopper. Starting at 0:34, the video depicts the bowling balls exiting the machine after having been demolished and broken into small pieces. The balls, based on the common and commercial meaning of the term, have been crushed or ground to bits.

18

In addition to breaking, crushing, or scooping the material in the chamber, the inserts on the moving rotor also force the pieces of input material toward the counter knife at the bottom of the hopper. Material already broken or scooped away by the rotor and cutting inserts will leave the chamber if it is small enough to fit in the gap between the rotor and counter knife.

Material that is too large to fall through the gap may be pressed against the counter knife and cut by the action of the counter knife and the cutting inserts. Sturm Dep. (Exhibit 12) 51:9-51:20. However, this cutting process is secondary to the action of the rotor. As Mr. Sturm described it:

> Q. And having the cutter knife – I'm sorry – the counter knife and cutters sharp is what makes the machine work for more – allows the machine to break down the material easier?
>
> A. Yeah. It is more important to have the sharp rotor cutters or rotors inserts than to have a sharp counter knife. A counter knife is not so important in most of the cases. It's the rotor knife, because most of the shredding or cutting or size reduction process or grinding takes place between the material itself and the spinning rotor, not so much against the counter knife.
>
> Q. Okay. So it's really the rotor interaction with the material to be size reduced that causes the breakdown of the material?
>
> A. Yes.

Sturm Dep. (Exhibit 12) 55:18-56:13.

Mr. Kolbet also noted that the action of the counter knife is relatively less important when asked whether the interaction between the cutting inserts and counter knife would have a "scissoring effect" on the material being processed. He responded: "There may be some of that happening. I wouldn't call it the – the primary machine design, but – but that might be occurring in that area. Could be." Kolbet Dep. (Exhibit 13) 79:2-10. This is consistent with his previously referenced testimony in which he clarified that any "shredding" happening at the counter knife is secondary to the grinding and crushing happening through the action of the rotating cutters. *Id.* at 172:8-173:12. Further, whatever limited cutting is happening at the counter knife is not inconsistent with the common meaning of the terms "grinding" and "crushing."

Finally, the VAZ 1600 and VAZ 1800 size-reduction machines incorporate screening as an important part of the grinding and crushing process. The screen is visible in Figure 1 above on the far right and on the top left of the detail image. According to Mr. Sturm's testimony, "Ninety-nine percent of applications require a screen." Sturm Dep. (Exhibit 12) 60:2-3. Stressing this point, he added, "There's very, very little occasions where you would say a screen is not necessary, but the utmost number of applications that I know would definitely require a screen." *Id.* at 60:9-12. Screens for Vecoplan's size-reduction machinery vary in hole diameter from 3/8" to 6". Exhibit 1, 003. The screens size the output to customer requirements.

In addition to sifting the output material, the screen continues the grinding process for material that slips past the counter knife but does not fall through the screen. Mr. Kolbet described this in his deposition in relation to wear on the screen and why it is reversible:

> The reason for that is that historically a screen will wear in the area at the bottom of the screen. This would be the area where the material has passed the counter knife and is continuing it's path where the – where the rotor is working on it against the screen, and most of that grinding and grating that occurs at – happens at the bottom of the screen, that first presentation of the material to the screen; and then by the time it gets to the middle of the screen, it's – it's – it's either been busted up and fell through or it's going to be carried back to the cutting chamber.
>
> So what happens is the bottom half of the screen tends to wear because of that – that grinding and grating action.
>
> So what a customer can do is as they see that wear occurring on the screen, they can unbolt their screen, turn it 180 degrees, bolt it back on, and effectively kind of have a new surface for serving for that grinding purpose.

Kolbet Dep. 247:3-248:4. The screen is an integral component of the Vecoplan size-reduction machine and is used in 99% of customer applications.

The above discussion establishes that the VAZ 1600 and VAZ 1800 perform crushing, grinding, and screening operations. This is also evident from an examination of the output of the process, which demonstrates that these machines break and demolish input material into relatively small pieces. Exhibit 17 to Mr. Sturm's deposition testimony is Vecoplan's Response to Customs Proposed Notice of Action, dated August 23, 2016 (attached as Exhibit 15). Exhibit 15 contains

photographs of materials that have been processed by Vecoplan size-reduction equipment.[3] Kolbet Dep. (Exhibit 13) 80:14-19 ("it appears to be, that these are . . . materials we've collected after shredding").

The first sample, labeled "Kevlar Helmets, ¾" Screen" shows a homogenous and fibrous mass of material. The second image, "Bowling Balls, 2" Screen" shows larger, discrete chunks of material. Other images show radiators, "box lights," vinyl flooring, "Teflon purge," seatbelts, and newspaper that have been crushed or ground. In every case, the input material has been broken, demolished, and reduced in size to relatively smaller pieces.

It is true that some of the output consists of larger pieces that appear to have been torn from the input. This is true, for example, of the vinyl flooring. It is not, however, evidence that the VAZ 1600 and VAZ 1800 are shredders and not grinding or crushing machines for classification purposes. First, plaintiff reiterates that "shredder" is not a tariff term. Second, to the extent "shredder" has a distinct meaning, the witness testimony establishes that it refers to a size-reduction machine in which cutting or shearing is the predominant operation. Mr. Kolbet explained this in his deposition testimony explaining his affidavit:

> Q. So right off – that would automatically, according to your definition of shred, having a single rotor system automatically would eliminate it from a shredding function then?
>
> A. No. I don't – I don't think I would say that. I'm just saying that –
>
> Q. That a single –
>
> A. I'm using an example of the dual shaft that has disks that cut against each other as the example of what that shredding action would be matching my description.
>
> Q. Right. So if you look at the next sentence, it says, based on the definition in the preceding paragraph, these models cannot perform a cutting motion action because only a single shaft rotor is used in the machines. So that being a single shaft rotor,

---

[3] Pursuant to the Judicial Protective Order, ECF No. 32, and after consultation, via email on November 4, 2022, counsel for the United States informed counsel for plaintiff that defendant waived JPO the protected status of information plaintiff provided to U.S. Customs and Border Protection.

according to this paragraph, looks to eliminate the – the – the VAZ machines from your definition of shred then.

A. When I said that moments ago, I – I guess my point was, is there may be some machine out there that's a single shaft that is a shearing action. I – I – I don't know for sure. There may be something.

But what I do know is like the machine that we use and the machine that other companies use as shredders, with two shafts, using disks, that's the shredding action we're describing.

If we want to talk about the VAZ single shaft machine, then I would – I would say that they're not primarily shredding by this description. They're grinding or crushing.

Kolbet Dep. (Exhibit 13) 168:12-170:2. This testimony is entirely consistent with Mr. Kolbet's prior statement clarifying that the shearing action of the counter knife might be "shredding," but that is not the function of the machines in question. *Id.* at 173:5-12.

Finally, with respect to the vinyl flooring, for example, Mr. Kolbet explained that the particle size was comparatively large because "it was drawn through the counter knife, through the gap that may [have] existed between the cutter and the counter knife. Now, that is because it's thin." *Id.* at 271:8-12. Rather than indicate that this material was "shredded," this testimony explains that it was **not** successfully cut or sheared by the counter knife and merely torn as it passed through the gap. Also, Exhibit 15 clearly indicates that no screen was used when processing the vinyl flooring. Exhibit 15, GOV00185. As a result, it can only have passed through the grinding process once. Sturm Dep. (Exhibit 12) 90:21-24. Presumably, had a screen been present, as it is 99% of the time, the vinyl flooring would have passed back to the hopper and been further processed until it was reduced in size consistent with the selected screen size.

The newspaper shown in Exhibit 15 also appears to be torn into irregular pieces. Exhibit 15, GOV000188. According to Mr. Kolbet, this material is consistent with having "pass[ed] through a – a Vecoplan grinder." Kolbet Dep. (Exhibit 13) 93:4-6.

The evidence and testimony is consistent and conclusive that the VAZ 1600 and VAZ 1800 size-reduction machines operate by repeatedly and harshly impacting input material with cutting

inserts installed along the rotating shaft. The cutting inserts are effectively the "teeth" that perform the grinding and crushing by breaking off bits from the larger mass of the input material. The cutting and shearing action of the counter knife is secondary and does not contradict the common understanding of grinding and crushing.  Moreover, the machines also perform a screening operation.

Under the HTSUS, when a machine is used for more than one purpose, it is to be classified as if its principal purposes were its sole purposes. HTSUS, Chapter 84, Note 7. In this case, the evidence establishes that the principal function of the VAZ 1600 and VAZ 1800 machines is to reduce the size of input material by the repeated, harsh action of the rotating cutting inserts. The action of the counter knife is a secondary process in support of the overall design intention of grinding the input material. See Kolbet Dep. (Exhibit 13) 79:2-10.  Nevertheless, it is relevant and instructive that these machines perform crushing, grinding, **and** screening functions, all three of which are functions described *eo nomine* in HTSUS item 8479.82.00. As such, that is the most natural and correct place to classify this merchandise.

> 2.     *Single-Shaft Rotary Side-Reductions Machines Were and Are Marketed as "Grinders"*

Despite the clear evidence of their physical operation, the Defendant's position appears to be largely reducible to the proposition that because they are called "shredders" in marketing literature and patents, the machines cannot be grinding and crushing machines. First, while common, that usage is not exclusive. Exhibit 1, the VAZ 1300 and VAZ 1600 brochure, certainly does refer to the machines as "shredders." Nevertheless, in the detail on page 3, the document states, "Anvil has a replaceable counter knife plate with close tolerance profile. The anvil stabilizes the **grinding** process." Exhibit 1, 003. (also Fig. 1 above). Mr. Sturm confirmed that "grinding" in that context refers to the size-reduction process at work in these machines. Sturm Dep. (Exhibit 12) 179:9-20.

Mr. Kolbet was more specific:

A. Well, so we would consider this machine to be a grinder/crushing machine. So it acts to resist the material and – and so – and keep it from – from moving past the floor or moving towards the screen until the rotor has – but – and the rotors cutters have been able to act upon it by grinding, crushing, scooping. So it anchors the grinding process.

Q. So is there a reason why in this section in contravention to other statements throughout the entirety of the document, it says grinding rather than shredding?

A. What's the question? That –

Q. Is there a reason – Is there a reason specifically for this paragraph, that it says grinding instead of shredding?

A. No. I think the words are interchangeable. It just as well say shred – shredding or that you could change shredding within the document to be grinding. There, they would be interchangeable.

Kolbet Dep. (Exhibit 13) 251:4-252:1.

This is also true of the patents on which the Government has spent considerable time. U.S. Patent No. 9,144,803 B2 (filed Sep. 29, 2015) (attached as Exhibit 16) is a Vecoplan patent listing, among others, Gary Kolbet as an inventor. Exhibit 16, 001. A second patent, U.S. Patent No. 6,837,453 B2 (filed Jan. 4, 2005) (attached as Exhibit 17) lists Thomas Sturm as the sole inventor. Exhibit 17, 001. The '803 Patent describes a "Shredder with Multi-Point Cutters." Exhibit 16, 001. Despite that both patents describe the operation of the machines as being to "grind up or shred material." Exhibit 16, 017. Specifically, the '803 Patent states: "The primary components of the shredder are a rotor that carries cutters as further described below, and a counter knife that works in conjunction with the rotor **to grind up or shred material** fed into the space where the rotor and counter knife converge." (Column 4, Lines 5-9). The '453 Patent uses the same language in Column 2 at Lines 47-51. Exhibit 17, 005. Testifying about this language, Mr. Kolbet, stated that shredding and grinding are, in this context, "one and the same. It's grinding." Kolbet Dep. (Exhibit 13) 243:22-244:1-3. Mr. Sturm agreed. Sturm Dep. (Exhibit 12) 180:15-25.

Next, until about 2001, machines equivalent in operation to the VAZ 1600 and VAZ 1800 were known commercially as "grinders." This is evident from affidavits, deposition testimony, and documentary evidence. Most directly, the testimony of Mr. Beusse confirmed his affidavit that in the 1980s, Vecoplan AG, now plaintiff's parent company, invented a "machine called the single shaft rotary grinder and that the name grinder was chosen because it accurately described the physical action of the process used in the machine." Beusse Dep. (Exhibit 4) 119:23-120:9. Asked to define "grind," Mr. Beusse testified, "Well, basically to -- to crush and grate material versus what a conventional shredder would do, which is rip or cut or tear material into -- into long strips." *Id.* at 120:18-22.

In Mr. Beusse' experience marketing these machines to the wood industry, the company referred to the machines as grinders. According to Mr. Beusse's deposition testimony:

Q. Since I know [you're] more familiar with the marketing before 2015, before 2015, if you were marketing the VAZ line to the wood industry, what -- what would you have called it?

A. I always called it wood grinder. Did that always make it to the advertisements or -- or graphics, I think so, but I -- but, no, I would call it a wood grinder. That's what that industry --

Q. Okay.

A. -- recognizes.

Q. And do you -- do you market this exact -- these exact pieces of machinery to the – the wood industry?

A. Yes.

Beusse Dep. (Exhibit 4) 128:20-129:11. Later, the company wanted to distinguish its grinder products from another category of size reducing equipment used in the plastics industry known as "granulators." Granulators were also called grinders. Vecoplan adopted "shredder" as a marketing term to distinguish its product. *Id.* at 131:13-133:13. This was done for marketing purposes, even though "shredder" does not technically describe the function of the machine. *Id.* at 139:22-140:1.

Mr. Kolbet testified to substantially the same transition:

A. Well, when I was first hired by Vecoplan, the -- the terminology seemed to be just across the board, everything was called a rotary grinder.

And very shortly after that, the terminology started to come in that people were calling it a shredder and it was like – didn't make sense. Well, you know, we -- we knew what these dual-shaft shredders look like, and it was like, why are we calling our machine a -- a shredder? It's -- It's a rotary grinder.

So -- So over a very short period of time, it really morphed to where we were using this term shredder, shredding, and as I mentioned before even propagate some out into the other -- the other applications to -- to get to 2000 -- I forget what the date is on this patent, but to get to 2005 and -- and pretty much be calling everything cutting and shredding is not surprising to me.

Kolbet Dep. (Exhibit 13) 244:20-245:18.

Documentary evidence illustrates this change in terminology. Exhibit 73 to the Sturm Deposition is a brochure for "a single-shaft rotary waste grinder" that is "very similar to a VAZ 1300." Sturm Dep. (Exhibit 12) 176:7-12. This brochure, Vecoplan, "The Original Single-Shaft Rotary Waste Grinder," (2001), is attached as Exhibit 18 and the cover is reproduced below as Figure 2. The brochure describes the "rotary grinder concept" as a "low speed, high torque, low noise, ram feed, single shaft rotary operation." Exhibit 18, 002. During Mr. Sturm's deposition, counsel for the defendant referenced the brochure and asked, "This is calling it a grinder, but the process that we've spoken about is the same. Right?" Mr. Sturm answered, "It's all the same." He continued and government counsel followed with:

A. I don't know what the difference between shredding and grinders is after all these years being in the business. It's probably the market you sell it to. If you sell this machine to wood industry, they call it a grinder, and whenever somebody throws plastic in it, they call it a shredder.

Q. But the important part is how it works, which is what we've talked about all day today?

A. Yes.

Sturm Dep. (Exhibit 12) 176:21-177:9.



*Figure 2*

Other companies at the time also marketed single-shaft rotary size-reduction machines as grinders. In his deposition, Mr. Kolbet noted a competitor of Vecoplan's is a company known as Alleghany. Kolbet Dep. (Exhibit 13) 252:9-10. In a 2008 marketing brochure, Allegheny describes its security grinders as "Utilizing our proprietary sing-shaft rotary design coupled with screen sizes ranging from 3/8" to 4" . . . ." Allegheny, *Allegheny Security Grinders* (2008) (attached as Exhibit 19) (Exhibit 19, 001). Page two of this exhibit includes a picture of the Allegheny rotor and counter knife and page three describes the feeder ram, all of which are remarkably similar to the corresponding Vecoplan equipment depicted in Exhibit 1 and which is at issue in this case. Exhibit 19, 002.

The practice of marketing these machines as grinders continues to this day. For example, in the September 2020 issue of the trade publication Pallet Enterprise (attached as Exhibit 20), at page 31, there is a Vecoplan ad directed at helping pallet companies manage wood waste. The ad shows a Godzilla-like monster made of scrap wood standing over a Vecoplan single-shaft rotary grinder. The headline reads "Chip It. Grind It. Shred It" and the text "From grinders and chippers to pelletizer plants, Vecoplan's heavy-duty equipment can handle your wood waste." The ad makes no distinction between grinding and shredding. Similarly, on page 14 in the September 2020 issue of FDMC, the magazine of woodworkingnetwork.com (attached as Exhibit 21), an ad shows the same monster over a model VHZ 1100 "shredder" with the same headline "Grind It. Shred It. Chip It" followed by "Do it however you want, but your monstrous wood scrap is no match for Vecoplan." The VHZ 1100 is a single shaft rotary size-reduction machine that operates on the same principles as the VAZ 1600 and VAZ 1800. In the brochure, Vecoplan, VHZ 600/800/1100 (2021) (attached as Exhibit 22), the ram, rotor with cutting inserts, and counter knife are all visible. Exhibit 22, 002.

The history of Vecoplan's marketing is clear. When introduced to the U.S. market, the single-shaft rotary size-reduction machine was advertised and known as a grinder and was used predominantly for wood scrap management. Over time, Vecoplan perceived opportunities in plastics

and other industries and began marketing its products as "shredders" to avoid confusion with plastic granulators. During that transition, nothing changed about the process by which the cutting inserts pound, crush, grind, and break input material until it is demolished into relatively smaller bits and pieces that are sifted into valuable output. These machines, regardless of their marketing description, are crushing, grinding, and screening machines. They are, therefore, properly classified in 8479.82.00.

### D. Respectful Consideration of the German Version of the Harmonized Tariff Indicates that Single-Shaft Rotary Size-Reduction Machines are Classifiable in HS Subheading 8479.82.

The Harmonized Tariff Schedule of the United States is the U.S. implementation of the internationally recognized Harmonized System. The purpose of this international system is to provide "a certain level of organization to the classification of imported goods," particularly through the six-digit subheading level. *Jacobi Carbons Ab v. United States*, 38 CIT 932, 936 n.9, 992 F. Supp. 2d 1360, 1365 (2014). When construing tariff language, the Court should not reach an interpretation that is inconsistent with the "principles of the Harmonized System Convention and is not indicated in the text of the statute or any legislative history. *Victoria's Secret Direct, LLC v. United States*, 37 CIT 573, 593, 908 F. Supp. 2d 1332, 1351 (2013). Consistent with that, it is appropriate for the Court to give respectful consideration to the classification of this merchandise in other countries that implement the Harmonized System. *Cummins Inc. v. United States*, 454 F.3d 1361, 1366 (Fed. Cir. 2006).

In this case, a relevant point of comparison is the German implementation of the Harmonized System. The European Union's implementation of the Harmonized System, Council Regulation 2658/87, Integrated Tariff of the European Communities, (1987) O.J. (L256), known as the TARIC in its member states, can be found on European Commission's web site available at https://ec.europa.eu/info/index_en. The German version of TARIC Heading 8479 is at the web

address in the footnote below.[4] The text is included as Exhibit 23. Subheading 8479.82 of the TARIC in German reads, "zum Mischen, Kneten, **Zerkleinern**, Mahlen, Sieben, Sichten, Homogenisieren, Emulgieren oder Rühren." Exhibit 23, 001 (emphasis added).

"Zer" is a German prefix indicating to dissolve or to break up. For example, the word "zerbeissen" is defined as: "bite through (*or* to pieces), crunch." "Zerfall" means, among other things, "disintegration." "Zerfetzen" means, among other things, "to tear up, tear in (*or* to) pieces *or rags*; shred; slash." Finally, "zerhauen" means "cut (asunder or to pieces)."  Langenscheidt, New College German Dictionary, 624 (1990) (attached as part of collective Exhibit 3) (Exhibit 3, 019).

Most relevant, the word "zerkleinern," which appears in the TARIC is defined as "reduce to small pieces, comminute; mince; chop up (wood); crush (stones); grind, pulverize." *Id.* at 624-25 (1990) (Exhibit 3, 019-020). It is, therefore, not surprising that Vecoplan's German language marketing employs that term to describe its machines. For example, in the deposition of Thomas Sturm, the government referenced Exhibit 57, a section of Vecoplan's website describing its "shredding" products. *See* Vecoplan AG, "Shredding Gruppe Zerkleinern" (attached as Exhibit 24). The top of every page of that exhibit includes the notation "Gruppe Zerkleinern." This indicates that these machines are *eo nomine* within the German implementation of subheading 8479.82 and should be treated similarly in the U.S.

## CONCLUSION

There is no dispute as to the method of operation of this equipment. The issue before the Court is, therefore, the proper scope of the terms "crushing, grinding, and screening" as used in

---

4

https://ec.europa.eu/taxation_customs/dds2/taric/measures.jsp?op=&MeasText=&logoPath=europa%2fecl%2fimages%2flogo&Lang=de&StartPub=&Offset=0&GoodsText=&Taric=8479000000&LangDescr=en&Area=&textSearch=&OrderNum=&MeasType=&europaPath=europa&SimDate=20221101&measEndDat=&EndPub=&measStartDat=&Regulation=&DatePicker=01-11-2022&ShowMatchingGoods=&ExpandAll=&search_text=goods (last visited Nov. 4, 2022).

HTSUS subheading 8479.82. Nothing in the law or in common English usage of those terms excludes plaintiff's machines. They are designed to and perform the task of demolishing waste material by breaking it into relatively small bits and pieces through the action of cutting inserts on a rotating shaft. This is a grinding and crushing operation. The presence of sharp cutting inserts is not incompatible with finding that these machines are grinding and crushing. The sharpness of the inserts and the presence of the counter knife merely facilitates the grinding and crushing process. Having decided for marketing reasons to call a grinder a shredder should not deprive Vecoplan of the correct classification of this merchandise.

Vecoplan, therefore, respectfully asks this Court to grant this Motion for Summary Judgment and order that Customs and Border Protection reliquidate the subject entries and refund the excess duties paid with interest as provided by law.


Respectfully submitted,


/S/Lawrence M. Friedman

Lawrence M. Friedman
Pietro N. Bianchi
**BARNES, RICHARDSON & COLBURN, LLP**
303 East Wacker Drive
Suite 305
Chicago, IL 60601
O: 312 297-9554
M: 847 331-5797
lfriedman@barnesrichardson.com